IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KIMBERLY SLAUGHTER, individually and on behalf of others similarly situated, | )<br>)<br>)<br>) |
| Plaintiff, | ) No. 17-cv-5846<br>) |
| v. | ) Jeffrey T. Gilbert<br>) Magistrate Judge |
| CAIDAN MANAGEMENT COMPANY, LLC, | )<br>)<br>) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Kimberly Slaughter ("Plaintiff"), on behalf of herself and others similarly situated, has moved for conditional certification of a collective action in this case brought under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (the "FLSA"), and for authorization to issue notice to the putative members of the conditionally certified collective action. Plaintiffs' Motion for Step-One Notice pursuant to 29 U.S.C. § 216(b) ("Plaintiffs' Motion"), [ECF No. 39]. Defendant Caidan Management Company, LLC ("Defendant") opposes the conditional certification of a collective action and some of Plaintiff's proposals regarding the issuance of notice. Defendant's Opposition to Plaintiff's Motion for Conditional Class Certification and Court Authorized Notice ("Defendant's Response"), [ECF No. 48]. For the reasons stated below, Plaintiffs' Motion [ECF No. 39] is granted in part and denied in part.

### BACKGROUND

Defendant provides staffing and other administrative services to healthcare companies, including Meridian Health Plan of Michigan, Inc. ("MHPMI") and Meridian Health Plan of Illinois, Inc. ("MHPIL"). Defendant's Response, [ECF No. 48], at 2. MHPMI and MHPIL offer

products to Medicaid, Medicare, and Healthcare Exchange members in Michigan and Illinois, respectively. *Id.* Plaintiff began working as a Community Care Coordinator for Defendant in approximately August 2014.[1] Slaughter Declaration, [ECF No. 40-11], ¶ 1. According to Plaintiff, her primary job duties as a Care Coordinator or Community Care Coordinator consisted of: (1) asking members standardized questions to collect data for assessments; (2) inputting answers to those questions into Defendant's computer system; (3) coordinating care by performing such ministerial tasks as arranging appointments, referrals, and obtaining necessary authorizations from members; and (4) supplying members with additional information and resources to educate members concerning their health plan needs. First Amended Complaint, [ECF No. 18], ¶ 18.

Plaintiff and eighteen other opt-in plaintiffs or potential opt-in plaintiffs[2] have submitted declarations in support of this Motion. These individuals are current and former care management employees ("CMEs") of Defendant who performed utilization management and/or core coordination job functions, with varying job titles such as: Care Coordinator, Community Care Coordinator, Utilization Care Coordinator, Community Health Outreach Worker, Care Coordinator Support Specialist, Medicare Benefit Care Coordinator, and Inpatient Review Nurse. Pl's Exs. B–T, each at ¶¶ 1, 2. These declarants state that, as CMEs, they performed five primary core duties: (1) communicate with and gather data from members to document members' medical circumstances in Defendant's computer system ("Data Collection"); (2) input

---

[1] It is unclear whether Plaintiff continues to be employed by Defendant and what her specific job title is or was. In her First Amended Complaint [ECF No. 18], Plaintiff alleged she worked as a Care Coordinator from approximately August 2014 to January 2016. First Amended Complaint, [ECF No. 18], at ¶ 17. However, her declaration, executed in February 2018, indicates she continues to be employed by Defendant as a Community Care Coordinator. Slaughter Declaration, [ECF No. 40-11], at ¶ 1.

[2] As of the date of this Memorandum Opinion and Order, Declarants Ciara Smith and Angela Harris [ECF Nos. 40-4 and 40-10] have not opted into this lawsuit.

2

member data into Defendant's computer system ("Data Entry"); (3) use established guidelines to maximize utilization of plan resources through application of predetermined criteria ("Care Utilization:"); (4) provide information to members and providers regarding plan benefits and resources to address members healthcare needs ("Plan Education"); and (5) work with members and providers to set up medical care ("Care Coordination"). *Id.* at ¶ 1.

Plaintiff and the other declarants state they regularly worked more than 40 hours per week and that they were paid a salary, but not any overtime compensation. *Id.* at ¶ 4. Each says that he or she performed his or her work as a CME "in accordance with Defendant's policies, procedures, guidelines, and guidelines embedded in Defendant's computer software," and "could not deviate from these guidelines to perform [his or her] work, and, under no circumstance, had the authority to deny a member's request for a service or benefit." *Id.* at ¶ 3. Finally, these declarants state that, based on their experience working for Defendant, conversations with other CMEs, and attendance through training calls or webinars, Defendant has employed "several hundred" CMEs in Michigan and Illinois that work or have worked under the same or similar conditions. *Id.* at ¶ 5. Specifically, the declarants say these individuals performed similar work, performed similar hours, were classified as exempt from overtime, were paid a salary, and never received overtime pay for their overtime work. *Id.*

Defendant disputes that all CMEs perform the same common, core job duties and argues that Plaintiffs have failed to identify a common policy or plan to which all potential plaintiffs fell "victim." Further, Defendant contends that Plaintiffs have included positions in their putative collective that are not even categorized as exempt, or that were in fact paid overtime.

3

## LEGAL STANDARD

"Under Section 216(b) of the FLSA, employees may bring a collective action on behalf of themselves and other 'similarly situated' employees against employers who violate the Act's minimum wage or overtime provisions." *Smallwood v. Illinois Bell Tel. Co.*, 710 F. Supp. 2d 746, 750 (N.D. Ill. 2010). A collective action proceeds in two steps. *Rottman v. Old Second Bancorp, Inc.*, 735 F. Supp. 2d 988, 990 (N.D. Ill. 2010). At step one, the court decides whether to conditionally certify a collective action. *Smith v. Family Video Movie Club, Inc.*, 2015 WL 1542649, at *2 (N.D. Ill. Mar. 31, 2015). To establish that conditional certification is appropriate, the plaintiff must make "a modest factual showing" that similarly situated employees and she "together were victims of a common policy or plan that violated the law." *Hudgins v. Total Quality Logistics, LLC*, 2016 WL 7426135, at *3 (N.D. Ill. Dec. 23, 2016) (quoting *Terry v. TMX Fin. LLC*, 2014 WL 2066713, at *2 (N.D. Ill. May 19, 2014)).

The Court's "determination [as to whether a collective action may be appropriate] at this initial phase of inquiry does not involve adjudication of the merits of the claims." *Brabazon v. Aurora Health Care, Inc.*, 2011 WL 1131097, at *3 (E.D. Wis. Mar. 28, 2011). "Rather, the named plaintiff 'must demonstrate only that there is some factual nexus that connects [her] to other potential plaintiff's as victims of an unlawful practice.'" *Id.* (citations omitted). Courts apply the similarly situated requirement "leniently," *Rottman*, 735 F. Supp. 2d at 990, and "typically" conditionally certify a representative class. *Solsol v. Scrub, Inc.*, 2015 WL 1943888, at *2 (N.D. Ill. Apr. 27, 2015). If the plaintiff carries her burden at step one, then the court "the court will conditionally certify the collective action and authorize the plaintiff to give notice to putative members." *Hudgins*, 2016 WL 7426135, at *3.

## DISCUSSION

This matter is now before the Court on Plaintiffs' Motion for Step-One Notice Pursuant to the FLSA [ECF No. 39]—essentially a motion for certification of a conditional class in a section 216(b) collective action. Plaintiffs seek conditional certification solely for the purpose of sending notice to potential class members. Therefore, at this time, the Court is only concerned with whether Plaintiff and the proposed class are similarly situated with respect to a common policy or plan established by Defendant that allegedly violates the law. *See Bentancourt v. Maxim Healthcare Servs., Inc.*, 2011 WL 1548964, at *5 (N.D. Ill. Apr. 21, 2011).

### A. Conditional Certification

Plaintiffs claim Defendant violated the FLSA's overtime provisions by improperly classifying salaried CMEs as exempt, requiring them to work over 40 hours per week, and failing to pay them an overtime premium for this work. The Court must first determine whether an adequate showing has been made at this first step so that the Court may conditionally certify a class and authorize notice to potential class members. Plaintiffs move for conditional certification of the following group of employees:

> Defendant's current and former nonsupervisory employees who worked more than 40 hours in at least one workweek over the past three years, who were paid a salary, and whose job duties included (1) asking members standardized questions to collect data for care assessments, (2) inputting answers to those questions into Defendant's computer systems, (3) coordinating care by performing such ministerial tasks as arranging appointments, referrals, and obtaining necessary authorizations from members, and (4) supplying members with additional information and resources to educate members concerning their health plan needs, or other similar work.

Plaintiff's Reply in Support of Their Motion for Notice to Potential Plaintiffs and Conditional Certification ("Plaintiffs' Reply"), [ECF No. 55], at 2–3; First Amended Complaint, [ECF No. 18], ¶ 27. According to Plaintiffs, this definition specifically includes all salaried,

nonsupervisory CMEs that worked in Defendant's Care Coordination Department that Defendant reclassified as non-exempt in December of 2017:

> [Behavioral Health] Clinical Care Coordinator, Care Coordination Auditor, Care Coordination Clinical Auditor, Care Coordinator Support Specialist, Care Coordinator, Complex Case Manager, Community Care Coordinator, Community Health Outreach Worker, Eligibility Specialist, and Nurse Clinical Specialist.

Plaintiff's Reply, [ECF No. 55], at 3. Plaintiffs also move for notice to salaried "Inpatient Review Nurses," "Utilization Management Care Coordinators," and "Medicare/Medicaid Benefit Care Coordinators." *Id.*

As an initial matter, the Court will not at this time authorize notice to Behavioral Health Clinical Care Coordinators, Care Coordination Auditors, Care Coordination Clinical Auditors, Complex Case Managers, Eligibility Specialists, or Nurse Clinical Specialists. There are no declarations from current or former employees with these job titles. The only evidence Plaintiffs have submitted in support of their contention that these positions should be included in the class definition is a slide from a PowerPoint presentation, which shows only that these positions are part of the "Care Coordination Department," and were reclassified from salaried employees to hourly employees as of December 25, 2017. [ECF No. 40-1]. This is not enough, even under the lenient standard applied at this stage. *See Bentancourt*, 2011 WL 1548964, at *6 ("Even under this lenient standard . . . the factual showing required to meet the similarly situated standard is not a 'mere formality.'"). Simply because a position falls under the umbrella of the "Care Coordination Department" does not mean it involves "Care Coordination" or "Utilization Management" duties, as evidenced by the affidavit of Carolyn Rossi, the Senior Director of Care Coordination.[3]

---

[3] Rossi states that Care Coordination Auditors and Clinical Care Coordination Auditors do not perform "Care Coordination" or "Utilization Management" duties. Rossi Affidavit, [ECF No. 48-2], ¶ 11. Plaintiffs say, if this is true, they are willing to withdraw their request for Step One Notice for these two

6

However, the Court concludes that Plaintiffs have satisfied their burden of a "modest factual showing" with respect to the remaining job titles: Care Coordinator, Community Care Coordinator, Community Health Outreach Worker, Utilization Care Coordinator, Care Coordinator Support Specialist, Medicare/Medicaid Benefit Care Coordinator, and Inpatient Review Nurse. Sworn declarations submitted in support of Plaintiffs' Motion indicate that the primary duties of current and former CMEs with these job titles consisted of data collection, data entry, care utilization, plan education, and care coordination. Plaintiffs' Brief, [ECF No. 40], Exs. B–T, each at ¶ 1. According to these declarants, these job duties did not involve the exercise of independent clinical judgment, providing traditional nursing care in a clinical setting, or providing direct medical care to members. *Id.* at ¶ 2. These declarants say they performed their work in accordance with Defendant's policies, procedures, guidelines, and guidance embedded in Defendant's computer software. *Id.* at ¶ 3. Defendant provided training on how to use these decision-making tools to perform the work in a consistent manner, and the employees were not permitted to significantly deviate from Defendant's guidelines in performing their work. *Id.*

Defendant does not dispute that Care Coordinators were classified as exempt employees and were not paid overtime. Rather, it contends that these employees have different job functions and the state and federal contracts that these employees work under are significantly different. Defendant's Response, [ECF No. 48], at 8. But "plaintiffs can be similarly situated for purposes of the FLSA" even when "there are distinctions in their job titles, functions, or pay." *Jirak v. Abbott Labs., Inc.*, 566 F. Supp. 2d 845, 849 (N.D. Ill. 2008). The determination of whether employees are similarly situated does not focus on their day-to-day work activities.

---

auditor positions. Plaintiffs' Reply, [ECF No. 55], at 3–4. On this record, there is no reason for the Court not to take Rossi's statement as true.

*Smallwood*, 710 F. Supp. 2d at 751. Instead, the inquiry focuses on whether the employees "'together were victims of a common policy or plan that violated the law.'" *Id.* at 752 (quoting *Flores v. Lifeway Foods*, 289 F. Supp. 2d 1042, 1045 (N.D. Ill. Oct. 30, 2003)). "[A]rguments about dissimilarities in the class are more appropriate for step two of this process after discovery, rather than at this initial certification stage." *Frebes v. Mask Restaurants, LLC*, 2014 WL 1848461, at *2–3 (N.D. Ill. May 8, 2014).

Defendant also asserts that the position of Medicare/Medicare Member Benefit Coordinator has always been paid on a non-exempt, hourly basis, and that UM Care Coordinators and UM Inpatient Review Nurses work under a fluctuating workweek schedule and are paid for all overtime work performed. Muzingo Affidavit, [ECF No. 48-1], ¶¶ 7, 8; Rossi Affidavit, [ECF No. 48-2], ¶¶ 14, 15. Plaintiffs, however, have submitted sworn declarations from former employees who held these positions which state that Defendant paid these individuals a salary and failed to pay them any overtime pay for their regular overtime work. Gordon Dec., [ECF No. 40-20], ¶ 4; Morin Dec., [ECF No. 40-2], ¶ 4; Pearl Dec., [ECF No. 40-3], ¶ 4; Cadeau Dec., [ECF No. 40-13], ¶ 4. The information furnished by Defendant therefore does not conclusively establish that Plaintiffs are not similarly situated or that other current or former employees were not subject to the policy alleged to exist regarding overtime. "Nor is it proper at this stage for [the Court] to make such a merits determination, judging the credibility of each parties' [sic] declarants." *Anyere v. Wells Fargo, Co., Inc.*, 2010 WL 1542180, at *3 (N.D. Ill. Apr. 12, 2010); *see also Briggs v. PNC Fin. Servs. Grp., Inc.*, 2016 WL 1043429, at *2 (N.D. Ill. Mar. 13, 2016) ("[A]t this initial stage, 'the court does not make merits determinations, weigh evidence, determine credibility, or specifically consider opposing evidence presented by a

defendant.'"); *Russell v. Ill. Bell Telephone Co.*, 575 F. Supp. 2d 930, 935 n.3 (N.D. Ill. 2008) ("the Court's role at this stage is not to assess any party's credibility").

Furthermore, "the applicability of FLSA exemptions typically is not addressed during step one of the certification analysis." *Ivery v. RMH Franchise Corp.*, 280 F. Supp. 3d 1121 (N.D. Ill. 2017). Accordingly, "Defendant's argument that [P]laintiff and the proposed class are not similarly situated with respect to how they actually perform their jobs and the issue of whether [D]efendant properly classifies all or some of its [CMEs] as exempt employees are more appropriately decided on a more developed factual record." *Bentancourt*, 2011 WL 1548964, at *7.

Finally, although Defendant characterizes it as a "legitimate business decision," the December 2017 reclassification of several positions within the Care Coordination Department to non-exempt status does provide *some* evidence of a common policy affecting plaintiffs and putative notice recipients. *Peterson v. March USA, Inc.*, 2010 WL 5423734, at *5 (N.D. Ill. Dec. 23, 2010); *see also Smallwood*, 710 F. Supp. 2d at 752 ("A common policy or plan appears to exist because on May 16, 2009, all OSP Engineers were uniformly reclassified as non-exempt employees, making them eligible for overtime payments. In evaluating the merits of conditional certification under § 216(b), these considerations are far more important than any similarities or dissimilarities regarding the nuts and bolts of the employees [sic] day-to-day duties."); *Olmsted v. Residential Plus Mortg. Corp.*, 2008 WL 5157973, at *3 (N.D. Ill. Dec. 9, 2008) (granting conditional certification where the plaintiff alleged that the defendants "routinely misclassified employees as exempt from FLSA requirements").

Again, at this stage the Court is tasked only with determining whether it can "envision a scenario" where Plaintiffs and potential collective action members are similarly situated. *Brandt*

*v. Comcast Corp.*, 2012 WL 4482124, at *5 (N.D. Ill. Sept. 26, 2012). In the Court's view, Plaintiffs have presented sufficient evidence to demonstrate that Community Care Coordinators, Care Coordinators, Community Health Outreach Workers, Utilization Care Coordinators, Care Coordinator Support Specialists, Medicare/Medicaid Benefit Care Coordinators, and Inpatient Review Nurses are similarly situated in that they performed common duties and were subject to a company-wide policy that may have resulted in improperly denying them overtime compensation.

If, as Defendant claims, the differences between the different CMEs' positions prove so significant that their claims cannot be decided as a class, Defendant may ask the Court to decertify the class or the class may be divided into subclasses. *Bentancourt*, 2011 WL 1548964, at *8. However, such a determination is better suited to the second stage. *Id.*; *see also Boltinghouse v. Abbott Labs., Inc.*, 196 F. Supp. 3d 838, 841 (N.D. Ill. 2016) ("In the second stage, after the completion of the discovery and opt-in process, the court reexamines the conditional certification to determine whether the trial as a collective action is proper.").

**B.     Notice Issues**

The Court next addresses whether Plaintiffs' proposed form of notice is adequate and appropriate. The effectiveness of a collective action depends on putative class members "receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1898). District courts therefore have a responsibility to "oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way." *Id.* at 170–71.

Plaintiffs make a number of specific requests related to notice. Defendant responds with a number of objections to Plaintiffs' proposed notice. The Court will address each of these issues in turn.

### 1. Class Definition

Defendant first argues that the class Plaintiffs seek to notify is too broad, and proposes limiting the notice to Care Coordinators, Community Care Coordinators, and Utilization Management Care Coordinators who work in Illinois. Defendant's Response, [ECF No. 48], at 20–21. The Court disagrees.

As discussed above, the Court concludes that Plaintiffs have satisfied their burden with respect to seven specific job titles. Further, the Court sees no reason to limit the collective to Illinois employees only. The declarations submitted by Plaintiffs in support of their Motion include employees from both Illinois and Michigan, and Defendant has not offered any substantive argument as to why the collective should be limited to employees who worked only in Illinois. Notice is authorized to those who are encompassed by the collective action that the Court has conditionally certified as set forth above.

### 2. Opt-In Period

Plaintiffs request that putative members of the collective action be given sixty (60) days to opt-in to this lawsuit. Plaintiffs' Brief, [ECF No. 40], at 11. Defendant does not address this issue. Therefore, the Court will permit a 60-day notice and opt-in period.

### 3. Reminder Notice

Plaintiffs also request that the Court authorize the issuance of reminder notice to all collective members. Plaintiffs' Motion, [ECF No. 39], at 1. Defendant does not address this issue. However, because the Court is permitting Plaintiffs to issue notice in multiple forms,

11

including those discussed below, the Court concludes that a reminder is not necessary in this case. If Plaintiffs' counsel learns of evidence that the authorized methods of issuing notice are ineffective and has reason to believe that sending a reminder will address that deficiency, counsel should so inform the Court and this issue can be revisited. *See Hudgins*, 2016 WL 7426135, at *6 ("Absent any evidence that notice via first-class mail and e-mail is ineffective, these additional forms of notice are unnecessary and overly intrusive.").

### 4.    Notice and Consent Forms

Plaintiffs request that notice be issued by sending the two forms attached to their Motion. [ECF Nos. 40-21, 40-22]. Defendant does not address whether it has problems with the consent forms, but raises several objections to the content of the proposed notice.

### a.    *The Right to Retain Other Counsel / Defense Counsel's Contact Information*

Defendant first objects that the proposed notice fails to inform potential opt-ins of their right to retain their own counsel, and that "equity mandates" that the notice also provide Defendant Caidan's contact information for additional information. Defendant's Response, [ECF No. 48], at 22. First, "a notice does not need to include defense counsel's contact information as 'there is no basis in law or logic for this request.'" *Curless v. Great Am. Real Food Fast, Inc.*, 280 F.R.D. 429, 436 (S.D. Ill. 2012) (quoting *Gambo v. Lucent Technologies, Inc.*, 2005 WL 3542485 (N.D. Ill. Dec. 22, 2005).

Additionally, the notice does not need to inform potential plaintiffs that they may choose to opt into the lawsuit and retain their own counsel. *See Kelly v. Bluegreen Corp.*, 256 F.R.D. 626, 632 (W.D. Wis. 2009). Under ordinary circumstances, opt-in plaintiffs would be represented by the existing plaintiffs' counsel. Potential plaintiffs who want different counsel are "free to file [their] own lawsuit," instead of opting into the suit, as the proposed notice

already explains. [ECF No. 40-21, at 2]. If circumstances exist in the future that require certain opt-in plaintiffs to have separate counsel, the Court can and will address that issue at the appropriate time.

### b. *Potential Discovery Obligations or Costs*

As to Defendant's next concern, while some courts have held that potential plaintiffs in an FLSA collective action "should be advised of the possibility that opt-in plaintiffs may be required to provide information, appear for a deposition, and/or testify in court, *Salomon v. Adderley Indust., Inc.*, 847 F. Supp. 2d 561, 566 (S.D.N.Y. 2012), such a requirement is not common in this district. "Where an FSLA collective action could include a large number of opt-in plaintiffs, a warning to each potential plaintiff that he or she may be required to sit in depositions and testify is unnecessary." *Boltinghouse*, 196 F. Supp. 3d at 843. In most cases, the possibility that any one plaintiff will be over-burdened is slim, representative discovery may be the superior approach, and, if participation by opt-in plaintiffs is required, they always have the ability to opt out if they wish to do so. *See id.* (collecting cases).

Plaintiffs also take issue with Defendant's suggestion that the notice should include language about Defendant's potential ability to assert that Plaintiffs should pay Defendant's attorneys' fees, arguing that such language "is solely intended to discourage potential opt-ins from asserting their rights." Plaintiffs' Reply, [ECF No. 55], at 12–13. Courts in the Seventh Circuit are not in agreement regarding whether opt-in notices should affirmatively warn about potential exposure to a defendant's fees and costs. *Compare Fosbinder–Bittorf v. SSM Health Care of Wisconsin, Inc.*, 2013 WL 3287634, at *7 (W.D. Wis. Mar. 21, 2013) (including in notice the sentence "If you do not prevail on your claim, court costs and expenses may possibly be assessed against the class") *with Anyere*, 2010 WL 1542180, at *5 (denying the defendant's

13

request to include such a warning in the notice, where the plaintiff's attorneys had agreed to provide such information to any potential plaintiff who contacted them); *Petersen v. Marsh USA, Inc.*, No. 10 C 1506, 2010 WL 5423734, at *6 (N.D.Ill.Dec.23, 2010) (rejecting defendants' proposed language regarding costs as "unnecessary"). Here, the Court agrees with Plaintiffs that such a warning is not necessary at this stage, but Plaintiffs' attorneys must inform any potential plaintiff who contacts them to discuss opting in that Defendant may assert a right to recover their fees and costs from Plaintiffs and opt-in plaintiffs if the suit is unsuccessful and that courts can grant such relief in appropriate cases. *See, e.g, Fields v. Bancsource, Inc.*, 2015 WL 3654395, at *6 (N.D. Ill. June 10, 2015); *Anyere*, 2010 WL 1542180, at *5.

### 5. Notice via U.S. Mail, Email and Text Message

Plaintiffs request that notice be issued by regular U.S. mail, email, and text message. Plaintiffs' Motion, [ECF No. 39], at 1. Defendant objects to the use of email and text message, citing privacy concerns. Defendant's Response, [ECF No. 48], at 22–23. Specifically, Defendant argues that providing the email addresses for potential collective members "is intrusive and an invasion of privacy especially where these individuals entrusted this personal information in Caidan in order to secure employment, not as a matter of free choice." Defendant's Response, [ECF No. 48], at 23.[4] However, "nowadays, communication through email is the norm." *Knox v. Jones Grp.*, 2016 WL 4943825, at *7 (S.D. Ind. Sept. 16, 2016), *on reconsideration in part*, 2016 WL 6083526 (S.D. Ind. Oct. 18, 2016) (citation omitted); *see also Pieksma v. Bridgeview Bank Mortg. Co., LLC*, 2016 WL 7409909, at *6 (N.D. Ill. Dec. 22, 2016).

---

[4] Defendant's argument proves too much. Plaintiffs presumably also gave Defendant their home or other mailing addresses for the purpose of securing employment, and courts routinely approve mailed notice.

14

Although there is a split among district courts as to "whether e-mail notice is appropriate in the FLSA collective action context," this Court joins those that have found it to be appropriate because "of the prevalence of e-mail as a form of communication." *See Hudgins*, 2016 WL 7426135, at *6. "Mindful of the [undesirable] potential for recipients to modify and redistribute email messages," however, the Court requires that the notice be emailed as a .pdf attachment rather than included in the body of the email message sent to potential opt-ins. *Muir v. Guardian Heating & Cooling Servs., Inc.*, 2017 WL 959028, at *10 (N.D. Ill. Mar. 13, 2017) (internal citations and quotation marks omitted); *see also Boltinghouse*, 196 F.Supp.3d at 844 ("Because [the plaintiffs] proposed that the notice be e-mailed as a .pdf attachment . . . the risk for improper modification of the notice appears to be minimal.").

The Court will not at this time authorize notice via text message. Absent some showing that U.S. mail and email notice will not reach prospective class members, the Court finds that this additional form of notice is unnecessary and overly intrusive. *See Hudgins*, 2016 WL 7426135, at *6 ("Absent any evidence that notice via first-class mail and e-mail is ineffective, these additional forms of notice are unnecessary and overly intrusive."). In the Court's view, most people do not expect to receive unsolicited business communications via text message, particularly from a former employer. Plaintiffs can raise the issue of notice via text message again in a later motion, if warranted, to address notices that are undeliverable. At that point, the balance between privacy concerns and the need to notify someone of the right to participate in this collective action may be different.

### 6. Contact Information of Potential Plaintiffs

Plaintiffs request that Defendant produce the following information: the names, job title, start and end dates of employment, last known addresses, e-mail addresses, and telephone

numbers of potential plaintiffs. Plaintiffs' Memo, [ECF No. 40], at 11.[5] Granting a "request for potential plaintiffs' names, phone numbers, and physical addresses is standard practice in this district." *Boltinghouse*, 196 F. Supp. 3d at 844. Email addresses, job titles, and dates of employment also are discoverable. *See Shumate v. Genesco, Inc.*, 2018 WL 259942, at *5 (S.D. Ind. Jan. 2, 2018) (plaintiff was "entitled to discover the names, addresses, telephone numbers, email addresses, and dates of employment" of potential plaintiffs); *Girolamo v. Cmty. Physical Therapy & Assocs., Ltd.*, 2016 WL 3693426, *6 (N.D. Ill. July 12, 2016) (same). To the extent Defendants have privacy concerns, "[a] protective order limiting the use of this information to its intended purpose will adequately address [them]." *Russell*, 575 F. Supp. 2d at 939.

The Court, however, denies Plaintiffs' request for discovery of proposed members' social security numbers at this time. Social security numbers are sensitive personal data that should not be released unless necessary. *See Blakes v. Ill. Bell Tel. Co.*, No. 11 CV 336, 2011 WL 2446598, *7 (N.D. Ill. June 15, 2011) ("providing sensitive personal data such as a social security number is not to be done lightly.") (citation omitted). The Court is unpersuaded that disclosure of this information is necessary for plaintiffs to accomplish effective notice. *See Hudgins*, 2016 WL 7426135, at *6.

Plaintiffs have requested that Defendant be ordered to produce this contact information (in useable electronic form) within three days of the date of this Memorandum Opinion and Order. Defendant does not object to this time frame, however, given that there may be "several hundred" potential opt-in plaintiffs, the Court finds that production of the requested information within seven days of the date of this Order is a more appropriate and realistic time frame.

---

[5] Plaintiffs' Motion, worded differently than the Memorandum in Support, seeks "a computer-readable data file containing the names, last known mailing addresses, last known personal and work email addresses, mobile telephone numbers, social security numbers (for those notices returned undeliverable), and work locations for all collective members." Plaintiffs' Motion, [ECF No. 39], at 1.

16

## CONCLUSION

For the reasons discussed above, Plaintiffs' Motion for Step One Notice Pursuant to 29 U.S.C. § 216(b) [ECF No. 39] is granted in part and denied in part. As should be clear from the above discussion, Plaintiffs are not authorized to issue notice to putative members of the collective action until all the issues discussed above have been addressed. Plaintiffs shall file a revised notice consistent with this Order within seven days of the date of this Order.

It is so ordered.

                                              Jeffrey T. Gilbert
                                              United States Magistrate Judge

Dated: July 5, 2018